1  CRISTINA L. TALLEY, CITY ATTORNEY
   MOSES W. JOHNSON, IV, ASSISTANT CITY ATTORNEY
2  STATE BAR NO. 118769
   200 South Anaheim Boulevard, Suite 356
3  Anaheim, California 92805
   (714) 765-5169
4  (714) 765-5123 FAX
   mjohnson@anaheim.net
5
   RICHARD R. TERZIAN, (SBN 30300)
6  E-mail:  rterzian@bwslaw.com
   KRISTIN A. PELLETIER, (SBN 155378)
7  E-mail:  kpelletier@bwslaw.com
   BURKE, WILLIAMS & SORENSEN, LLP
8  444 South Flower Street, Suite 2400
   Los Angeles, CA  90071-2953
9  Tel:  213.236.0600
   Fax:  213.236.2700
10
   Attorneys for Defendants
11 CITY OF ANAHEIM and OFFICER
   KEVIN FLANAGAN
12

13
                   UNITED STATES DISTRICT COURT
14
               FOR THE CENTRAL DISTRICT OF CALIFORNIA
15

16 JERRY ALEXANDER,                )   CASE #SACV 08-08596 DOC(ANx)
   individually, and SHERYL        )   consolidated W/ SACV 09-0069
17 BELL, individually,             )
                                   )   DEFENDANTS NOTICE OF MOTION
18                                 )   AND MOTION FOR PARTIAL
                                   )   SUMMARY JUDGMENT; MEMORANDUM
19                                 )   OF AUTHORITIES; SEPARATE
                                   )   STATEMENT OF UNDISPUTED FACTS
20                                 )   AND CONCLUSIONS OF LAW; AND
                                   )   DECLARATION OF MOSES W.
21                                 )   JOHNSON, IV
              Plaintiffs,          )
22                                 )   DATE:   July 12, 2010
   vs.                             )   TIME:   8:30 a.m.
23                                 )   CTRM:   9D
   CITY OF ANAHEIM, and DOES 1     )
24 through 10, Inclusive           )   TRIAL DATE: 9/14/10
                                   )
25            Defendants.          )
   RENEE ALEXANDER, et al.         )
26                                 )
              Plaintiffs,          )
27 vs.                             )
                                   )
28 CITY OF ANAHEIM, et al.         )

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-5123

| | | TABLE OF CONTENTS | |
|---|---|---|---|
| | | | PAGE |
| | MEMORANDUM OF POINTS AND AUTHORITIES | | 1 |
| I. | | INTRODUCTION | 1 |
| II. | | CONSOLIDATED FIRST AMENDED COMPLAINT ALLEGATIONS | 2 |
| III. | | STATEMENT OF FACTS | 3 |
| | A. | The October 28, 2008 Shooting Incident | 3 |
| | B. | Julian Alexander's Heirs | 8 |
| IV. | | STANDARD OF REVIEW | 8 |
| VI. | | 14th AMENDMENT-CONDUCT MUST "SHOCK THE CONSCIENCE" | 14 |
| VII. | | NO EQUAL PROTECTION VIOLATION | 20 |
| VIII. | | NO FAILURE TO TIMELY RENDER MEDICAL AID | 21 |
| IX. | | NO FAILURE TO TRAIN CLAIM | 22 |
| X. | | CONCLUSION | 24 |

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 765-5169
FAX (714) 765-5123

i

1

TABLE OF AUTHORITIES

2

**FEDERAL CASES**                                                                    **PAGES**

3   <u>Alexis v. McDonald's Rest. of Mass., Inc</u>.
4   (1st Cir. 1995) 67 F3d 341, 354                                                      21

5   <u>Anderson v. Liberty Lobby Inc</u>. (1986)
    477 US 242                                                                            9

6   <u>Armstrong v. Squadrito</u> (7th Cir. 1998)
    152 F3d 564                                                                          16

7   <u>Bryan County Commissioners Court v. Brown</u> (1997)
8   520 US 397, 403                                                                   23,24

9   <u>Byrd v. Guess</u> (9th Cir. 1998)
    137 F3d 1126, 1134                                                                15,18

10  <u>Canton v. Harris</u> (1989)
    489 US 378, 388-389, 109 S.Ct. 1197                                                  16

11  <u>Celotex Corporation v. Catrett</u> (1986)
12  477 US 317                                                                           9

13  <u>City of Oklahoma v. Tuttle</u> (1985)
    417 US 808, 823-824                                                                  23

14  <u>City of Canton v. Harris</u> (1989)
    489 US 378, 388, 109 S.Ct. 1197                                                      22
15
    <u>City of St. Louis v. Praprotnik</u> (1988)
16  485 US 112, 122-128                                                                  23

17  <u>Claybrook v. Birchwell</u> (6th Cir. 2000)
    199 F3d 350, 359                                                                  19,20
18
    <u>Collins v. Harker Heights</u> (1992)
19  503 US 115, 112 S.Ct. 1061                                                        17,23

20  <u>County of Sacramento v. Lewis</u> (1998)
    523 US 833, 836, 118 S.Ct. 1708                                                 passim

21  <u>Curnow v. Ridgecrest Police</u> (9th Cir. 1991)
    952 F2d 321, 325.                                                                    18
22
    <u>Draper v. Reynolds</u> (11th Cir. 2004)
23  369 F3d 1270, 1278                                                                   21

24  <u>Estelle v. Gamble</u> (1976)
    429 US 97, 104, 97 S.Ct. 285                                                      16,22

25  <u>Foster v. City of Fresno</u> (ED CA 2005)
26  392 FS2d 1140, 1146                                                                  10

27

28

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 765-5169
FAX (714) 765-5123

Gibson v. County of Washoe (9th Cir. 2002)
290 F3d 1175, 1185 ........................................................... 24

Hansen v. Black (9th Cir. 1989)
885 F2d 642, 644 ............................................................... 9

Hill v. Dekalb Regional Youth Detention Ctr.
(11th Cir. 1994) 40 F3d 1176, 1188 ............................... 22

Lewis v. County of Sacramento (9th Cir. 1996)
98 F3d 434 ........................................................... 15,16,17,19

Monell v. Dept. of Social Services (1978)
436 US 658 ...................................................................... 23

Moreland v. Las Vegas Metro Police (9th Cir. 1998)
159 F3d 365, 372 ....................................................... 16,19,25

Oviatt v. Pierce (9th Cir. 1992)
954 F2d 1470, 1477 ........................................................ 23

Pembaur v. City of Cincinnati (1986)
475 US 469, 481, 106 S.Ct. 1292, 1299 ......................... 23

Pers. Adm'r of Massachusetts v. Feeney (1979)
442 US 256, 272-274, 99 S.Ct. 2282 .............................. 21

Porter v. Osborn (9th Cir. 2008)
546 F3d 1131, 1137-1138 ........................................ 17,18,19

Radecki v. Barela (10th Cir. 1998)
146 F3d 1227 .................................................................. 17

Reynolds v. County of San Diego (S.D.Cal.1994)
858 F.Supp. 1064, 1069 ................................................ 13

Roberts v. U.S. Jaycees, (1984)
468 US 609, 617-18, 104 S.Ct. 3244 .............................. 18

Rogers v. Evans (11th Cir. 1986)
792 F2d 1052, 1058 ........................................................ 22

Russ v. Watts (7th Cir. 2005)
414 F3d 783, 790 ............................................................ 18

Smolen v. Deloitte, Haskins & Sells
(9th Cir. 1990) 921 F2d 959, 963 ................................... 9

Thigpen v. Bibb County Sheriff's Dep't.
(11th Cir. 2000) 223 F3d 1231, 1237 ........................... 20

Vill. of Arlington Heights v. Metro. Housing
Dev. Corp. (1977) 429 US 252, 265-266,
97 S.Ct. 555, 563 ....................................................... 20,21

Washington v. Davis (1976)
426 US 229, 239-242, 96 S.Ct. 2040 .............................. 21

Whitely v. Albers (1986)
475 US 312, 320, 106 S.Ct. 1078 ................................. 15,16

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 765-5169
FAX (714) 765-5123

iii

<u>Wood v. Housewright</u> (9th Cir. 1990)
900 F2d 1332, 1334                                                    22

**STATE CASES**

<u>Chavez v. Carpenter</u> (2001)
91 Cal.App.4th 1433, 1446-1448, 111 Cal.Rptr.2d
534                                                                *passim*

<u>Perry v. Medina</u> (1987)
192 Cal.App.3d 603, 608-09, 610, 237 Cal.Rptr.
532                                                                *passim*

**FEDERAL STATUTES**

42 USC §1983                                                     1,2,19,23

FRCP 56                                                                8

FRCP 56(c)                                                             8

FRCP 56(d)                                                             8

**STATE STATUTES**

CCP §377                                                           11,13

CCP §377.60(a)                                                        10

CCP §377.60(b)                                                    1,10,14

**OTHER**

4th Amendment                                                      2

14th Amendment                                               *passim*

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 765-5169
FAX (714) 765-5123

1     TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2     PLEASE TAKE NOTICE that on July 12, 2010, at 8:30 a.m., in

3   Courtroom 9D, Defendants the City of Anaheim ("City") and police

4   officer Kevin Flanagan ("Flanagan")("Defendants") will move this

5   Court, located at 411 West Fourth St., Santa Ana, California for

6   partial summary judgment under FRCP 56 on the following claims

7   of plaintiffs Jerry Alexander and Sheryl Bell:

8     1.   Violation of civil rights [14th Amendment] (1st claim),

9   on the grounds that Flanagan's use of force was not unrelated to

10   any legitimate law enforcement purpose and did not result from

11   an unlawful City custom, policy, or practice; further,

12   plaintiffs lack standing; and

13     2.   Wrongful death (3rd claim)(state claim), on the ground

14   that plaintiffs lack standing to assert a wrongful death claim

15   because the decedent did not support them and they were not

16   dependent on him for the necessaries of life, and he is survived

17   by a wife and child.  Further, the shooting was not negligent.

18     This motion addresses all of the claims brought by these

19   two Plaintiffs, which are identified in the Consolidated First

20   Amended Complaint as the first and third claims.  The second and

21   fourth alleged claims are brought solely by plaintiffs Renee

22   Alexander and M.A., a minor, and are not addressed by this

23   motion.

24     This Motion is based on this Notice of Motion and Motion,

25   the attached Memorandum of Points and Authorities, Separate

26   Statement of Undisputed Facts and Conclusions of Law,

27   Declaration of Moses W. Johnson, IV (with exhibits), filed

28   herewith, the First Amended Consolidated Complaint, and the

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-5123

1

1 pleadings and papers filed herein, and the arguments and

2 authority, as may be presented at the hearing on the Motion.

3 This Motion is made following the conference of counsel

4 pursuant to LR 7-3 which took place on May 19 and 23, 2010.

5 DATED: June 13, 2010          CRISTINA L. TALLEY, CITY ATTORNEY

6

7                               BY _____
                                 MOSES W. JOHNSON, IV

8                                Assistant City Attorney
                                 Attorneys for Defendants

9                                City of Anaheim and Officer
                                 Kevin Flanagan

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-5123

2

MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This motion is for partial summary judgment on the claims of plaintiffs Jerry Alexander and Sheryl Bell ("Plaintiff Parents") for defendants' alleged violation of the Fourteenth Amendment under §1983 and for wrongful death (state claim). All of Plaintiffs' claims concern the shooting death of Julian Carter Alexander ("Alexander" or "decedent") by Anaheim police officer Kevin Flanagan ("Flanagan") on October 28, 2008 at 1:30 a.m. Plaintiffs cannot prevail on their Fourteenth Amendment or wrongful death claims because they lack standing to pursue those claims because Alexander had a wife and child who are his heirs at law and decedent was not supporting Plaintiffs at the time of his death. In addition, Plaintiffs' Fourteenth Amendment claim fails as Plaintiffs cannot show that Flanagan shot Alexander for a reason that was unrelated to any legitimate law enforcement goal, because the evidence establishes that Flanagan shot Alexander because Alexander came at Flanagan with a 37 inch club that he was using as a weapon. Defendants are accordingly entitled to judgment as a matter of law on Plaintiffs' Fourteenth Amendment and wrongful death claims arising out of this officer involved shooting.

A parent may only assert a state wrongful death claim where there are issue if he or she is "dependent on the decedent." CCP §377.60(b). "Dependence" refers to financial rather than emotional dependency. Perry v. Medina (1987) 192 Cal.App.3d 603, 608-09, 237 Cal.Rptr. 532. To demonstrate financial dependence, a parent "must show that they were actually

1

dependent ... upon the decedent for the necessaries of life."
Id. at 610; Chavez v. Carpenter (2001) 91 Cal.App.4th 1433,
1446-1448, 111 Cal.Rptr.2d 534.  This case presents a question
of first impression in federal court where the issue of parents
financial dependency is disputed.

As the evidence clearly shows that Plaintiff Parents were
not financially dependent on decedent for the necessaries of
life, neither has standing to assert a wrongful death claim.

Neither do Plaintiff Parents have standing to raise a 4th
Amendment claim.  This eliminates Plaintiff Parents from all
federal claims except a 14th Amendment claim, which fails as well
because Officer Flanagan shot in self-defense.

**II.   CONSOLIDATED FIRST AMENDED COMPLAINT ALLEGATIONS**

Plaintiff Parents Consolidated Complaint alleges two claims
on their behalf: 1) Violation of Civil Rights-42 USC §1983 [14[th]
Amendment] and 3) Wrongful Death [state claim].  The other two
claims in the complaint are on behalf of the decedent's wife and
child.

Plaintiff Jerry Alexander is decedent's father and Sheryl
Bell is his mother [Plaintiff Parents].  ¶¶3, 4.

Plaintiff Renee Alexander is decedent's surviving wife and
Plaintiff M.A., a minor, is the surviving daughter.  ¶¶5, 7.

This shooting occurred during the early morning hours of
Tuesday October 28, 2008, at 316 N. Muller St., Anaheim.  At
1:30 a.m, decedent was present in the front of his home located
at 316 N. Muller St., when Officer Kevin Flanagan shot and
killed decedent.  ¶16.  Following the shooting, the involved
officers allegedly denied medical care to the decedent.  ¶17.

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-5123

1   Decedent survived for a short period of time before dying.   ¶18.

2   The deadly force was allegedly motivated by racial prejudice,

3   not done for proper law enforcement purposes and with a purpose

4   to harm not related to legitimate law enforcement objectives.

5   ¶19.   The shooting violated Plaintiff Parents 14TH Amendment

6   right to substantive due process and companionship with

7   decedent.   ¶¶24, 30.

8      Officer Flanagan also negligently used excessive force on

9   decedent causing his wrongful death.   ¶56.   Plaintiff Parents

10   allegedly had been financially dependent upon Alexander and have

11   sustained damages from the loss of his financial support.   ¶60.

12   **III.   STATEMENT OF FACTS**

13   **A.   The October 28, 2008 Shooting Incident**

14      During the early morning hours of October 28, 2008,

15   Flanagan was on patrol in Anaheim, in uniform, driving a marked

16   black-and-white Anaheim police car.   [Deposition of Kevin

17   Flanagan ("Flanagan Depo"), Exhibit A to the Declaration of

18   Moses W. Johnson, IV ("Johnson Decl."), at 43:8-44:6, 48:1-50:7,

19   72:5-11.]   As he drove north on N. Muller Street, Flanagan

20   observed broken glass on the street, which he believed may have

21   been from an auto burglary or stolen vehicle.   He was aware of

22   incidents and reports of vehicle thefts in the area.   [Flanagan

23   Depo., at 52:9-21, 54:6-55:12.]

24      As he continued past the broken glass Flanagan noticed

25   several individuals (the "subjects") walking in the street.

26   [Flanagan Depo, at 56:20-57:5.]   As he got closer and saw them

27   standing behind a hedge he observed that the tallest person in

28   the group was over 6 feet tall, with dark skin and short hair.

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-5123

1          As Flanagan proceeded on North Muller[1] he went past the
2  subjects and made a u-turn. Upon seeing this, the subjects then
3  began running from him and proceeded eastbound onto Bayport
4  Circle. [Flanagan Depo., at 64:19-25; Deposition of Johnny
5  Salvador ("Salvador Depo."), Ex. B to Johnson Decl., at
6  43:3-45:4.] Flanagan followed by turning left (East) onto
7  Bayport Circle and driving to the end of the block. [Flanagan
8  Depo., at 67:23-68:7.] At this point, Flanagan had lost sight
9  of the fleeing subjects, and he parked and exited the patrol
10  car. [Flanagan Depo, at 68:24-69:21.] He broadcast on his radio
11  that he was in pursuit of fleeing subjects possibly related to a
12  459 auto (auto burglary) and requested assistance. [Flanagan
13  Depo, at 73:16-20.] Flanagan did not know if the subjects he
14  was pursuing were armed or were gang members, but he knew this
15  was possible based on their appearances and because of the
16  proximity of the area to a known gang neighborhood. [Flanagan
17  Depo., at 70:24-71:16.]

18         Flanagan proceeded on foot down the mid-block alley that
19  runs parallel to North Muller, in a southern direction. He then
20  observed some of the subjects heading west by transversing the
21  adjacent backyard areas on the south side of the residences,
22  heading back toward Muller Street. [Flanagan Depo., at

23

24        [1] The shooting took place in the front yard of Alexander's
25  residence at 316 N. Muller St. That residence is located at the
26  corner of N. Muller St. (to the West) and W. Bayport Circle (to the
27  North), with other residences to the immediate East and South.
28  Behind 316 N. Muller to the East is an alley that runs parallel to
    N. Muller. [Flanagan Depo., at 87:11-15 and Ex. 2 thereto.]

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-5123

4

1  73:25-74:17, 75:5-11, 77:18-78:18.] This route contained a
2  series of fences that needed to be scaled to transverse it.
3  [Deposition of Johnny Salvador ("Salvador Depo."), Ex. B to
4  Johnson Decl., at 50:1-8.]

5  Rather than following the subjects over the fences behind
6  the residences, Flanagan elected instead to proceed back to the
7  sidewalk on W. Bayport Circle and moved west on Bayport Circle
8  towards Muller on a path parallel to the route taken by the
9  subjects. As he did so, he radioed that the subjects were
10 jumping fences and requested expedited backup. [Flanagan Depo.,
11 at 79:1-15, 85:7-87:15.]

12 The subjects traversed the fences and arrived in the front
13 yard area of the residences on North Muller, where they were
14 confronted by Alexander. Alexander was visibly angry,
15 threatened to kill the subjects, used profanity and racial
16 epithets against them, and attempted unsuccessfully to strike
17 one of them with a stick. [Salvador Depo., at pp. 55:8-60:10,
18 72:16-73:5]. One of the subjects informed Alexander that they
19 were running from the police. [Salvador Depo., at
20 60:24-61:10.].

21 At or around the time this was going on, Flanagan ran to
22 the end of Bayport Circle and peered around the corner onto
23 Muller. Flanagan observed three individuals in the front yard
24 adjacent to 316 North Muller who appeared to have transversed
25 the back of the residences and believed Alexander to be one of
26 the subjects he was chasing, i.e., the largest subject he had
27 observed before the pursuit began. [Flanagan Depo., at
28 89:22-92:8, 96:2-7, 97:2-18.] Two of the subjects sprinted

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-5123

5

south away from Flanagan and Flanagan shouted at them to stop.[2]

Flanagan gave chase across the front yard of 316 North Muller. As Flanagan did so, Alexander turned to face Flanagan, holding what appeared to be a large stick/club in his right hand. [Flanagan Depo., at 104:21-105:4, 111:20-112:2.] Flanagan stopped as abruptly as he could from a full sprint and, as Alexander began to advance toward him with the stick/club, he retrieved his gun from its holster. Alexander was looking directly at Flanagan and appeared to be angry. [Flanagan Depo., at 104:21-105:4, 111:20-113:22.]

Flanagan twice commanded Alexander to "drop it" (the stick/club). [Flanagan Depo., at 104:10-13; Jsames Depo., Ex. H. at 28:1-9.] Alexander did not respond to the commands and continued to approach at Flanagan. Alexander raised the stick/club he was carrying and closed the distance between the two men to about ten feet. At this point, Flanagan believed that, given Alexander's reach and the length of the stick/club, Alexander was one step away from striking him with the club. Fearing he was in imminent danger, Flanagan fired two shots from

[2] Flanagan recalls shouting "Police. Stop running." [Flanagan Depo., at 93:25-94:2]. Some of the subjects recall Flanagan shouting "freeze or I'll shoot." [Salvador Depo., at pp. 63:10-11; Deposition of Victor Garcia, Ex. I to Johnson Decl., at 28:11-24.] Others recall Flanagan saying "stay right there," or "don't move," or other words to indicate that the subjects should stay still. [Deposition of Aaron Jsames ("Jsames Depo."), Ex. H to Johnson Decl., at 27:15-25.]

1  his weapon which struck Alexander in the chest and caused him to
2  fall on his back.  [Flanagan Depo., at 111:20-119:6.]

3      Immediately after the shooting, Flanagan-still without
4  backup--retreated further across the yard for cover and radioed
5  code 998 (officer involved shooting).  [Flanagan Depo., at
6  125:11-25, 127:8-11.]  Flanagan was informed by the dispatcher
7  that the Anaheim Fire Department Paramedics were en route.
8  [Flanagan Depo., at 128:6-13.]

9      Within approximately a minute after the shooting, other
10  Anaheim police officers arrived on the scene.  The first officer
11  (Hurtado) initially handcuffed Alexander for officer safety
12  reasons.  Upon the arrival of a second officer (Burke) shortly
13  thereafter, the handcuffs were removed and first aid was
14  administered by the police until the paramedics arrived.
15  [Flanagan Depo., at 128:21-130:15; Deposition of Dan Hurtado,
16  Ex. C to Johnson Decl., at 12:1-13:8, 19:3-21:8.]

17      Several items of evidence were recovered after the
18  shooting, including the stick/club wielded by Alexander, which
19  was to the right of Alexander.  That item was described by
20  forensic scientist Annette McCall as a closet dowel.
21  [Deposition of Annette McCall ("McCall Depo."), Ex. D to Johnson
22  Decl., at 22:9-24.]  The stick/club was 37 inches long and an
23  inch or an inch and a half in diameter.  [Flanagan Depo., at
24  124:19-125:4; McCall Depo., at 22:9-24.]  It was taped on both
25  ends with black electric tape and was kept by the door in the
26  house where Alexander resided.  [Id.; Deposition of Renee
27  Alexander, Ex. E to the Johnson Decl., at 163:12-164:2,
28  172:21-25.]

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-5123

7

**B.   Julian Alexander's Heirs**

Julian Alexander was living with and married to Renee Alexander at the time of his death. Renee Alexander was pregnant and subsequently gave birth to Mr. Alexander's daughter, M.A. [Deposition of Renee Alexander, at 30:17-24, 34:13-16; Consolidated First Amended Complaint, at ¶¶ 5-7.] The plaintiffs to whom this motion is directed, Jerry Alexander and Sheryl Bell, are Julian Alexander's mother and father. Julian Alexander did not live with or financially support Jerry Alexander or Sheryl Bell at the time of his death in October of 2008. [Deposition of Renee Alexander, at 29:15-24; Deposition of Jerry Alexander, Ex. F to Johnson Decl., at 75:7-10, 86:11-88:2; Deposition of Sheryl Bell, Ex. G to Johnson Decl., at 73:3-10, 74:11-13, 100:20-101:5, 130:8-15.] In fact, Renee and Julian Alexander were being financially supported by Renee's family in 2008. [Deposition of Renee Alexander, at 62:6-24.]

Prior to his death, Julian Alexander was working at a temporary employment agency. Mr. Alexander's W-2 form shows that he earned only $1,805.78 in wages in 2008. [Deposition of Renee Alexander, at 78:23-79:24, 81:22-82:2 and Ex. 6 thereto.]

**IV.   STANDARD OF REVIEW**

Defendants seek partial summary judgment pursuant to FRCP 56. Such a motion must be granted if the moving party demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). The Court may also adjudicate less than the entire case as to specific issues without substantial controversy. FRCP 56(d). Here, defendants seek to have the

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-5123

1 Court adjudicate the claims brought by Jerry Alexander and
2 Sheryl Bell arising out of Flanagan's shooting of Alexander.
3 These claims include the first and third claims in the
4 Consolidated First Amended Complaint ("Complaint"), for alleged
5 violations of the Fourteenth Amendment and for wrongful death.
6 The moving party bears the burden of informing the Court of the
7 basis for its motion and identifying those aspects of the matter
8 which it believes indicate an absence of a genuine issue of
9 material fact.  Celotex Corporation v. Catrett (1986) 477 US
10 317.  Once the defendant moving party has identified the parts
11 of the plaintiffs' case where there is no genuine issue, the
12 burden shifts to the plaintiffs as responding parties to set
13 forth specific facts showing the existence of a genuine issue of
14 material fact.  Anderson v. Liberty Lobby Inc. (1986) 477 US
15 242.  The plaintiffs cannot satisfy this burden by merely
16 relying upon their own allegations and pleadings; rather the
17 plaintiffs must set forth specific facts showing that there is a
18 genuine issue for trial.  Hansen v. Black (9th Cir. 1989) 885 F2d
19 642, 644.

20      In short, to avoid summary judgment, a plaintiff must
21 "produce at least some significant probative evidence tending to
22 support the Complaint."  Smolen v. Deloitte, Haskins & Sells (9th
23 Cir. 1990) 921 F2d 959, 963.  Given the matter at issue here,
24 this requires plaintiffs to produce evidence that the shooting
25 of Alexander was for the purpose of causing harm unrelated to
26 any legitimate law enforcement purpose.  Plaintiffs cannot show
27 such because the evidence establishes that Flanagan acted in
28 response to an imminent threat, being hit in the head with a 37

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-5123

1 inch club. Nor can plaintiffs establish that they have standing
2 to bring a Fourteenth Amendment or wrongful death claim.

3 **V. WRONGFUL DEATH-MUST DEPEND ON FOR NECESSARIES OF LIFE**

4      Parents have standing to sue as heirs only if the decedent
5 left no issue. CCP §377.60(a); Chavez v. Carpenter (2001) 91
6 Cal.App.4th 1433, 1440-1444, 111 Cal.Rptr.2d 534, 539-543
7 [parents had no standing under CCP §377.60(a) where deceased son
8 was survived by 2-year-old daughter].

9      But, "[r]egardless of their status as heirs, parents may
10 sue for the wrongful death of their child 'if they were
11 dependent on the decedent.'" Chavez, supra, 91 Cal.App.4th at
12 1440; CCP §377.60(b); Foster v. City of Fresno (ED CA 2005) 392
13 FS2d 1140, 1146.

14      Parents asserting wrongful death standing through their
15 "dependence" on decedent under CCP §377.60(b), must show more
16 than reliance on decedent for emotional support (comfort and
17 affection). "'Dependence' refers to financial rather than
18 emotional dependency and a parent must show that they were
19 actually dependent ... upon the decedent for the necessities of
20 life." Foster, supra, 392 FS2d at 1146; Chavez, supra, 91
21 Cal.App.4th at 1445 ("Financial dependency should be the test
22 for parents who are not heirs of the decedent."). Accordingly,
23 Plaintiff "parent[s] may only assert a wrongful death claim if
24 ... [they are] dependent on the decedent." Foster, supra, 392
25 FS2d at 1146. Further, Chavez, supra, 91 Cal.App.4th at 1446,
26 holds that the "necessities of life" are "shelter, clothing,
27 food and medical treatment." See also Perry v. Medina (1987)
28 192 Cal.App.3d 603, 237 Cal.Rptr. 532.

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-5123

10

1      Chavez held "a parent cannot claim they are dependent
2   within the meaning of Code of Civil Procedure section 377 if
3   they receive financial support from their children which merely
4   makes available to them some of the niceties of life they might
5   not otherwise be able to afford.  But, if a parent receives
6   financial support from their child which aids them in obtaining
7   the things, such as shelter, clothing, food and medical
8   treatment, which one cannot and should not do without, the
9   parent is dependent upon their child.  The death of that child
10  in this type of situation results in a distinct pecuniary loss
11  to the parent which requires the parent to find aid elsewhere
12  for the basic things we all need."  Chavez, 91 Cal.App.4th at
13  1446, 111 Cal.Rptr.2d at 544.

14      It is anticipated that Plaintiff Parents will argue that
15  whether sufficient "necessaries" dependence existed at the time
16  of their child's death so as to confer wrongful death standing
17  on them is a question of fact and thus the motion for partial
18  summary judgment should be denied citing Chavez, supra, 91
19  Cal.App.4th at 1447-1448, 111 Cal.Rptr.2d at 545-546.

20      However, Chavez held, based on evidence of actual support,
21  a fact question existed as to whether appellants were actually
22  dependent upon the decedent for the necessaries of life.
23  Chavez, 91 Cal.App.4th at 1447 [evidence showed parents
24  routinely relied on decedent for money to defray their ordinary
25  living expenses, and for help with their cars, land, and
26  business].  But none of those facts exist here.  Quite the
27  contrary.  Decedent was dependent on new wife's parents, his in-
28  laws, with whom he lived for over 6 months at the time of his

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-5123

11

1 death in October of 2008.

2    It is anticipated that Plaintiff Jerry Alexander will
3 contend that decedent was providing him support because in the 6
4 months before decedent's marriage in October of 2008, the
5 decedent allegedly loaned him about $700. This is insufficient
6 and refuted by the testimony of decedent's wife that her parents
7 were supporting her and decedent. Plaintiff Sheryl Bell will
8 claim that when decedent lived with her and her husband after
9 graduating from high school he contributed some services like
10 cleaning the kitchen, specific groceries he wanted to eat, and
11 $40 a week in grocery money, even though between her and her
12 husband they made more than $140,000 a year. This is
13 insufficient as it occurred well before decedent's death as
14 shown by the testimony of decedent's wife that decedent moved in
15 with her parents by March of 2008. Further, decedent was not
16 doing anymore than a normal single son still living at home
17 would do and the money he gave his parents was not because they
18 needed it in any way, but to make him responsible.

19    Thus, Plaintiff Parents cannot prove that they were
20 **actually** dependent on decedent in October 2008 for the
21 necessaries of life, food, clothing, shelter and medical
22 treatment when decedent lived with his in-laws at 316 N. Muller,
23 Anaheim, at the time of his death. It is clear that decedent's
24 in-laws were supporting decedent financially because his W2 only
25 shows about $1800 in earnings. Thus, it's hard to understand
26 how Plaintiff Parents could have been getting financial support
27 from decedent in October of 2008.

28    The Chavez court analyzed this question in detail:

12

1     "'[T]he term 'dependent parents' ... means parents who, **at
the time of a child's death**, were **actually dependent**, to some
2  extent, upon the decedent for the **necessaries of life**.'
[citation].... [In] Perry v. Medina, supra, 192 Cal.App.3d at p.
3  610, 237 Cal.Rptr. 532 ... the court concluded that 'a parent
cannot claim they are dependent within the meaning of Code of
4  Civil Procedure section 377 if they receive financial support
from their children which merely makes available to them some of
5  the niceties of life they might not otherwise be able to afford.
But, if a parent receives financial support from their child
6  which aids them in obtaining the things, such as **shelter,
clothing, food and medical treatment**, which one cannot and
7  should not do without, the parent is dependent upon their child.
The death of that child in this type of situation results in a
8  distinct pecuniary loss to the parent which requires the parent
to find aid elsewhere for the basic things we all need.' (Ibid.)"
9
      "After setting forth its test for dependency, the court in
10  Perry v. Medina applied that test to the facts before it.
There, the appellant was a mother claiming status as a dependent
11  parent.  She 'lived on a meager $400 a month.  Decedent brought
her $100 worth of groceries a month.  They both ate from the
12  groceries he brought.  After he moved out of the apartment and
stopped paying $100 a month in rent, decedent gave her $50 a
13  month in addition to the groceries....  [The court] viewed
[these facts] in the perspective that appellant lived on $400 a
14  month, $200 of which paid her rent.' (Perry v. Medina, supra,
192 Cal.App.3d at p. 610, 237 Cal.Rptr. 532.)...."
15
      "[Fn. 9]  So far as [the court's] research discloses, Perry
16  v. Medina is the **only published decision in which financial
dependence was disputed**.  In other reported cases, the parents
17  who sought wrongful death standing conceded the lack of
financial support.  [citations]; Reynolds v. County of San Diego
18  (S.D.Cal.1994) 858 F.Supp. 1064, 1069, remanded in part (9th
Cir.1996) 84 F.3d 1162, 1171...."
19
      "In th[e] [Chavez] case, appellants brought forward a
20  number of facts in support of their status as dependent parents.
Those facts shed light on appellants' financial relationship
21  with their son.  Among other things, decedent paid his parents
$100 **per week** on average, which helped defray the cost of
22  housing and utilities.  He **regularly** provided groceries and
grocery money.  Decedent contributed services to the household,
23  including such tasks as window cleaning, maintenance of
appellants' four automobiles, and yard work on appellants' one
24  and one-half-acre property.  Because appellant Jose Chavez was a
diabetic with an injured shoulder ... he relied heavily on
25  decedent's services for upkeep of the property.  In addition,
decedent helped purchase a truck in his parents' name, making
26  the $9,000 down payment as well as some of the periodic loan
payments.  Decedent also helped out from time to time with his
27  father's cleaning business when he was shorthanded or
overworked...."
28

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-5123

1    "In [the court's] view, this record presents a disputed
2 fact question ... on the question of whether appellants 'were
actually dependent, <u>to some extent</u>, upon the decedent for the
3 necessaries of life.' [citation].  It appears from this record
that appellants received 'financial support from their child
4 which *aid[ed] them* in obtaining ... shelter, clothing, food....'
(<u>Perry v. Medina</u>, supra, 192 Cal.App.3d at p. 610, 237 Cal.Rptr.
5 532, italics added.)  There is evidence that appellants
**routinely** relied on decedent for money to defray their ordinary
6 living expenses, and for help with their cars, land, and
business.  The ... appellants relied on decedent's aid--at least
7 to some extent--for life's necessities." <u>Chavez</u>, supra, 91
Cal.App.4th at 1446-1448, 111 Cal.Rptr.2d at 544-546 (emphasis
8 added).

9    Here, Parent Plaintiffs cannot present the detailed

10 evidence of support shown in <u>Chavez</u> or <u>Perry</u> to prove they

11 depended on decedent for any of the necessities of life

12 ["shelter, clothing, food and medical treatment"].  Since

13 Plaintiff Parents were not financially dependent upon decedent,

14 whose W2 only shows $1,800 in earnings in 2008, for the

15 necessaries of life, they do not have standing to sue as

16 financially dependent parents under CCP §377.60(b).  Thus,

17 Defendants are entitled to partial summary judgment on Parent

18 Plaintiffs wrongful death state claim because they lack standing

19 to sue.

20    **VI.   14th AMENDMENT-CONDUCT MUST "SHOCK THE CONSCIENCE"**

21    The only remaining claim for Plaintiff Parents in this case

22 is the Fourteenth Amendment loss of familial relationship claim.

23 However, there remains the question of whether that claim must

24 be analyzed under the deliberate indifference or "shock the

25 conscience" standard.

26    Defendants anticipate that Plaintiffs will attempt to limit

27 the Supreme Court's application of the "shock the conscience"

28 standard in <u>County of Sacramento v. Lewis</u> (1998) 523 US 833, 118

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-5123

1 S.Ct. 1708, to 14th Amendment claims arising out of police
2 pursuit cases by citing to Byrd v. Guess (9ᵗʰ Cir. 1998) 137 F3d
3 1126. However, this overlooks one critical factor about the
4 Ninth Circuit's then application of the lesser deliberate
5 indifference standard to 14th Amendment claims of decedent's
6 surviving family members in fatal police shootings. The Ninth
7 Circuit in Byrd relied entirely on its earlier application of
8 the deliberate indifference standard to 14th Amendment claims in
9 Lewis v. County of Sacramento (9ᵗʰ Cir. 1996) 98 F3d 434. The
10 fatal problem with any attempt to cite Byrd as approving a
11 deliberate indifference analysis in such 14th Amendment claims
12 is that the U.S. Supreme Court expressly reversed the Ninth
13 Circuit's holding in Lewis v. County of Sacramento and instead
14 held that the higher "shock the conscience" standard must be
15 applied. While Byrd still holds that all loss of familial
16 relations claims must be analyzed under the 14th Amendment
17 standard, the Supreme Court changed the standard upon which the
18 Byrd court relied to one of shock the conscience. Plaintiffs
19 cannot cite a police shooting case applying a deliberate
20 indifference analysis to a 14th Amendment claim.

21 The Supreme Court in Lewis relied on its own previous
22 holding in Whitely v. Albers (1986) 475 US 312, 320, 106 S.Ct.
23 1078 to expand the "shock the conscience" standard beyond prison
24 riots to police pursuits: "The police, on an occasion calling
25 for fast action have obligations that tend to tug against each
26 other.... They are supposed to act decisively and to show
27 restraint at the same moment, and their decisions have to be
28 made in haste, under pressure, and frequently without the

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-5123

1 benefit of a second chance." Lewis, 523 US at 853-854. Officer
2 Flanagan's split-second decision to use deadly force when the
3 decedent confronted with a 37 inch club is indistinguishable
4 from the rationale applied by the Supreme Court to both prison
5 riots (Whitely) and police pursuits (Lewis). Officer Flanagan
6 was faced with precisely the same dilemma of acting decisively,
7 while showing restraint under tremendous pressure and clearly
8 without the benefit of a second chance (i.e. a police officer's
9 momentary hesitation in the face of a suspect perceived to be
10 armed frequently has only one tragic consequence). On the other
11 hand, the only 14th Amendment cases applying the lesser
12 deliberate indifference analysis have been those very limited
13 situations in which government officials actually had the time
14 to and did "deliberate" (with the requisite indifference) as to
15 the rights of the injured parties. [Estelle v. Gamble (1976)
16 429 US 97, 104, 97 S.Ct. 285-prison officials deliberately
17 indifferent to the medical needs of their prisoners; Canton v.
18 Harris (1989) 489 US 378, 388-389, 109 S.Ct. 1197-deliberate
19 indifference in failing to train employee causing harm].
20 Plaintiffs cannot find a case applying the deliberate
21 indifference standard to police action in a field situation such
22 as here. The Ninth Circuit and other circuits have been
23 expanding the Supreme Court's 14th Amendment conscience shocking
24 standard to virtually all law enforcement contexts. Moreland v.
25 Las Vegas Metro Police (9th Cir. 1998) 159 F3d 365, 372;
26 Armstrong v. Squadrito (7th Cir. 1998) 152 F3d 564-shock the
27 conscience applied to prolonged unlawful detention]. Relying on
28 the Supreme Court's shock the conscience 14th Amendment analysis

16

Case 2:08-cv-08596-DOC-AN   Document 53   Filed 06/14/10   Page 24 of 32   Page ID #:408

1  in Collins v. Harker Heights (1992) 503 US 115, 112 S.Ct. 1061,
2  the Tenth Circuit expanded the "purpose to commit harm" analysis
3  of Lewis to virtually all emergency law enforcement situations.
4  Radecki v. Barela (10th Cir. 1998) 146 F3d 1227.  Given that
5  Plaintiff Parents case is limited to the actions of Officer
6  Flanagan in dealing with Plaintiff's decedent who confronted him
7  with a 37 inch club, it would be contrary to circuit authority
8  to apply any standard other than that of "shock the conscience"
9  to Plaintiffs' remaining 14th Amendment claim.  As such, this
10 claim must be analyzed in terms of the Supreme Court's question
11 whether: "[Officer Flanagan's] behavior was so egregious, so
12 outrageous, that it may fairly be said to shock the contemporary
13 conscience."  Lewis, 523 US at 847, fn. 8.

14      Defendants respectfully urge this Court to follow virtually
15 all applicable authorities from the Supreme Court, the Ninth
16 Circuit and every other circuit by applying the "shock the
17 conscience" standard to Plaintiffs' remaining 14th Amendment
18 claim.

19      To satisfy this test Plaintiffs must show Officer
20 Flanagan's use of force was done with a purpose to harm
21 Alexander unrelated to legitimate law enforcement objectives.
22 Porter v. Osborn (9th Cir. 2008) 546 F3d 1131, 1137-1138
23 ("purpose to harm" standard is appropriately applied where an
24 officer acts in a rapidly evolving situation where split-second
25 decisions are required).  The Ninth Circuit in Porter recognized
26 that, "a parent's loss of a child's society 'raises a different
27 constitutional claim' than the child's direct Fourth Amendment
28 claim."  Id. at 1141 ("a different standard of culpability

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-5123

17

1 applies to the [parents'] due process claim"); Byrd v. Guess (9th
2 Cir. 1998) 137 F3d 1126, 1134; Curnow v. Ridgecrest Police (9th
3 Cir. 1991) 952 F2d 321, 325.

4     The due process clause of the Fourteenth Amendment protects
5 the family relationship from unwanted state government
6 interference.  Roberts v. U.S. Jaycees, (1984) 468 US 609,
7 617-18, 104 S.Ct. 3244.  A parent may assert such a claim under
8 §1983 when his or her child is killed by law enforcement
9 officials.  Curnow, 952 F2d at 325.

10     However, some circuits hold that a parents relationship
11 with their adult child is too attenuated for his death to
12 constitute the loss of a protected liberty interest.  The
13 Seventh Circuit has denied a parent's due process claim for loss
14 of familial association where the child decedent was emancipated
15 and had his own family.  Russ v. Watts (7th Cir. 2005) 414 F3d
16 783, 790 (Parents of adult son who was fatally shot by law
17 enforcement officer had no constitutional right under due
18 process clause to recover for the loss of society and
19 companionship of son).  Here, at the time of Alexander's death,
20 he was an adult, married, had a daughter on the way, and was
21 living with his wife's parents, his in-laws.

22     Even if Plaintiff Parents can pursue their 14th Amendment
23 claim that Officer Flanagan's conduct violated their
24 constitutional right of familial association, they must prove
25 Officer Flanagan's use of force was done with a purpose to harm
26 Alexander unrelated to legitimate law enforcement objectives.
27 Porter, 546 F3d at 1137; County of Sacramento v. Lewis (1998)
28 523 US 833, 836, 118 S.Ct. 1708.  An intent to inflict harm

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-5123

18

"beyond that which is required by a legitimate law enforcement objective that 'shocks the conscience' and gives rise to liability under §1983" is required. Porter, 546 F3d at 1140. Liability may only attach in those rare situations where the nature of an officer's deliberate physical contact is such that a reasonable fact finder would conclude the officer intended to "terrorize" decedent. Lewis, 523 US at 1708. The "denial of due process 'is to be tested by an appraisal of the totality of facts in a given case.'" Porter, 546 F3d at 1141; Lewis, 523 US at 850. The analysis must account for the "delicate balancing act between citizens' rights to be free from undue police force and the legitimate safety concerns of officers who make these life and death decisions." Id.

Plaintiffs "wrongful death" claim under the Fourteenth Amendment is brought to recover for the loss of companionship of decedent. Moreland, supra, 159 F3d at 371. In order to prevail under the substantive due process clause of the Fourteenth Amendment, plaintiffs must prove that Flanagan acted with a "purpose to cause harm unrelated to [his] legitimate law enforcement goals." Moreland, supra, 159 F3d at 372-373. In other words, in a rapidly evolving, fluid, and dangerous predicament which precludes the luxury of calm and reflective pre-response deliberation, a police officer's actions "shock the conscience" only if they involved force employed "maliciously and sadistically for the very purpose of causing harm." Claybrook v. Birchwell (6th Cir. 2000)199 F3d 350, 359 quoting County of Sacramento v. Lewis (1998) 523 US 833, 118 S.Ct. 1708, 1720.

19

1    Thus, the more exacting "malicious or sadistic" standard of
2  proof, rather than the "deliberate indifference" evidentiary
3  criterion, controls the "shocks the conscience" substantive due
4  process element.  Id. at 1720-1721.  Similarly, the "malicious
5  or sadistic" test of conscience-shocking behavior controls this
6  case because Officer Flanagan had no opportunity to ponder or
7  debate his reaction to the dangerous actions of the decedent
8  armed and coming at him with a 37 inch club.  Claybrook, supra,
9  199 F3d at 359-360.

10   Thus, Flanagan did not violate Plaintiff Parents'
11 substantive due process rights to family association when he
12 shot Alexander because he was responding to an imminent threat
13 and did not intend to commit any harm unrelated to the
14 legitimate use of force necessary to protect himself.  Because
15 there is no evidence to the contrary, defendants are entitled to
16 judgment on plaintiffs' Fourteenth Amendment claim.

17   **VII.  NO EQUAL PROTECTION VIOLATION**

18   Plaintiffs also allege that Officer Flanagan violated their
19 Fourteenth Amendment rights to equal protection.  To state an
20 equal protection claim, Plaintiffs must allege that "through
21 state action, similarly situated persons have been treated
22 disparately," Thigpen v. Bibb County Sheriff's Dep't. (11th Cir.
23 2000) 223 F3d 1231, 1237, and put forth evidence that Officer
24 Flanagan's actions were motivated by race.  Vill. of Arlington
25 Heights v. Metro. Housing Dev. Corp. (1977) 429 US 252, 265-266,
26 97 S.Ct. 555, 563.  But Plaintiffs have no evidence that Officer
27 Flanagan treated white subjects differently from African
28 American subjects and no evidence showing that Flanagan's

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-5123

1 actions were motivated by race. Draper v. Reynolds (11th Cir.
2 2004) 369 F3d 1270, 1278.

3     The undisputed evidence shows that Flanagan was not
4 cognizant of decedent's race at the time he shot him and thought
5 Alexander was one of the subjects he was chasing. [Flanagan
6 Depo., at 96:2-13, 97:2-18.] Decedent was approximately the
7 same size of the largest of the subjects Officer Flanagan had
8 been chasing. [Flanagan Depo., at 96:2-7, 97:2-7.]

9     "In order to avoid summary judgment on [their] Equal
10 Protection Clause claim[s]," it is incumbent on [Plaintiffs] "to
11 tender competent evidence that a state actor intentionally
12 discriminated against [him] because [he] belonged to a protected
13 class." Alexis v. McDonald's Rest. of Mass., Inc. (1st Cir.
14 1995) 67 F3d 341, 354. Plaintiffs must prove that the
15 defendant's actions had a discriminatory effect and were
16 motivated by a discriminatory purpose. Pers. Adm'r of
17 Massachusetts v. Feeney (1979) 442 US 256, 272-274, 99 S.Ct.
18 2282, Vill. of Arlington Heights v. Metropolitan Hous. Dev.
19 Corp. (1977) 429 US 252, 264-66, 97 S.Ct. 555, and Washington v.
20 Davis (1976) 426 US 229, 239-242, 96 S.Ct. 2040. This
21 Plaintiffs cannot do. Therefore, Defendants motion for partial
22 summary judgment on Plaintiffs equal protection claim should be
23 granted.

24     **VIII.  NO FAILURE TO TIMELY RENDER MEDICAL AID**

25     The Complaint's first claim also alleges that the
26 defendants were negligent in failing to render timely medical
27 aid to decedent after the shooting. To the extent that
28 Plaintiffs are alleging that a denial of medical care

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-5123

1 separate Fourteenth Amendment violation, Plaintiffs must prove
2 that defendants were deliberately indifferent to Alexander's
3 serious medical needs. Estelle v. Gamble (1986) 429 US 97, 104.
4 Deliberate indifference requires evidence that the medical care
5 was "so grossly incompetent, inadequate or excessive as to shock
6 the conscience or to be intolerable to fundamental fairness."
7 Rogers v. Evans (11th Cir. 1986) 792 F2d 1052, 1058. Proof of
8 negligence, even gross negligence, will not suffice. Wood v.
9 Housewright (9th Cir. 1990) 900 F2d 1332, 1334. Moreover, a
10 suspect 'who complains that delay in medical treatment rose to a
11 constitutional violation must place verifying medical evidence
12 in the record to establish detrimental effect of delay in
13 medical treatment in order to succeed." Hill v. Dekalb Regional
14 Youth Detention Ctr. (11th Cir. 1994) 40 F3d 1176, 1188.

15     Within a minute after the shooting, other Anaheim police
16 officers arrived on the scene. The 1st officer (Hurtado)
17 initially handcuffed decedent for officer safety reasons. Upon
18 the arrival of a 2nd officer (Burke) shortly thereafter, the
19 handcuffs were removed and first aid was administered by the
20 police until the paramedics arrived. [Flanagan Depo., at
21 128:21-130:15; Hurtado Depo., at 12:1-13:8, 19:3-21:8.]

22     Thus, all claims by Plaintiffs regarding defendant failing
23 to timely render medical care to decedent fail.

24     IX.   NO FAILURE TO TRAIN CLAIM

25     The Complaint's first claim also alleges that the City
26 failed to train its officer in the proper use of deadly force.

27     In City of Canton v. Harris (1989) 489 US 378, 388, 109
28 S.Ct. 1197, the Supreme Court extended municipal liability under

1  §1983 to cases in which officers are inadequately trained, but
2  "only where the failure to train amounts to deliberate
3  indifference to the rights of persons with whom the police come
4  into contact." In an inadequate training case, the plaintiff
5  must demonstrate that the training used was the result of "a
6  decision to adopt [a] particular course of action." Oviatt v.
7  Pierce (9th Cir. 1992) 954 F2d 1470, 1477, citing Pembaur v. City
8  of Cincinnati (1986) 475 US 469, 481, 106 S.Ct. 1292, 1299.
9  There is no evidence that Officer Flanagan was inadequately
10 trained with regard to the use of deadly force.

11     Further, "[p]roof of a single incident of unconstitutional
12 conduct is not sufficient to impose liability under Monell."
13 City of Oklahoma v. Tuttle (1985) 417 US 808, 823-824.

14     Plaintiffs cannot hold the City of Anaheim liable for the
15 shooting of Alexander unless that shooting took place as a
16 result of an unlawful City custom, policy, or practice. Monell
17 v. Dept. of Social Services (1978) 436 US 658. A local
18 governmental entity cannot be held liable under §1983 on a
19 respondent superior theory. There is no vicarious liability.
20 Collins v. Harker Heights (1992) 503 US 115, 122. Local
21 governmental entities may be held liable under §1983 only for a
22 deprivation of rights inflicted pursuant to official policy or
23 custom. Bryan County Commissioners Court v. Brown (1997) 520 US
24 397, 403; City of St. Louis v. Praprotnik (1988) 485 US 112,
25 122-128; Pembaur v. City of Cincinnati (1986) 475 US 469,
26 478-484.

27     Plaintiffs' claim against the City fail absent proof that
28 the City had a policy or practice that showed deliberate

23

1  disregard for Alexander's constitutional rights, or proof that a
2  City policy or practice was the moving force behind any
3  constitutional violation.   Gibson v. County of Washoe (9th Cir.
4  2002) 290 F3d 1175, 1185.  It is not enough for Plaintiffs
5  merely to identify conduct properly attributable to the local
6  government as "policy" or "conduct."  Plaintiffs must prove
7  that: (1) the City's actions were taken with the requisite
8  degree of culpability, i.e., deliberate indifference; and (2)
9  there is a direct causal link between the City's action, policy
10 or custom and the alleged deprivation of a federal right.  Bryan
11 County Commissioners Court, supra, 520 US at 404.  Here, there
12 is no evidence of any policy, custom, or causal connection
13 between any policy of the City (or lack of policy) and the
14 shooting of Alexander.  The shooting took place because
15 Alexander came at Flanagan with a 37 inch club, not because of
16 any unconstitutional City custom, policy, or practice.  Thus, it
17 cannot be said that Officer Flanagan was inadequately trained
18 with regard to the use of deadly force.  Accordingly, the City
19 of Anaheim is entitled to judgment on all of Plaintiff Parents
20 claims arising out of Alexander's shooting.

21      **X.   CONCLUSION**

22      Defendants motion for partial summary judgment should be
23 granted as Plaintiff Parents do not have standing to sue for
24 wrongful death as they did not rely on decedent for the
25 necessities of life in October 2008 when he was living with and
26 being supported by his in-laws.  Further, for any 14th Amendment
27 violation Plaintiff Parents must prove that Officer Flanagan
28 acted with a "purpose to cause harm unrelated to [his]

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-5123

24

1  legitimate law enforcement goals." <u>Moreland</u>, supra, 159 F3d at

2  372-373.  Plaintiffs Parents can't prove any 14th Amendment

3  violation because Officer Flanagan only shot decedent because he

4  came at him with a 37 inch club capable of inflicting serious

5  bodily injury.  Officer Flanagan was faced with the dilemma of

6  acting decisively, under tremendous pressure and clearly without

7  the benefit of a second chance when decedent closed the distance

8  to within 10 feet of him.  His momentary hesitation in the face

9  of who Officer Flanagan reasonably believed was a suspect armed

10 with a 37 inch club (closet dowel) frequently has only one

11 tragic consequence.  Here, the undisputed evidence shows that

12 Officer Flanagan shot Julian Alexander in self-defense.

13 DATED: June 13, 2010                CRISTINA L. TALLEY, CITY ATTORNEY

14

15                              BY

16                                 MOSES W. JOHNSON, IV
                                   Assistant City Attorney
17                                 Attorneys for Defendants
                                   City of Anaheim and Kevin
18                                 Flanagan

19

20

21

22

23

24

25

26

27

28

25