CRISTINA TALLEY, CITY ATTORNEY
(SBN 107298)
MOSES W. JOHNSON, IV, ASSISTANT CITY
ATTORNEY (SBN 118769)
E-mail: mjohnson@anaheim.net
200 S. Anaheim Boulevard, Suite 356
Anaheim, CA 92805
Tel: 714-765-5169
Fax: 714-765-5123

RICHARD R. TERZIAN, (SBN 30300)
E-mail: rterzian@bwslaw.com
KRISTIN A. PELLETIER, (SBN 155378)
E-mail: kpelletier@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA 90071-2953
Tel: 213.236.0600  Fax: 213.236.2700

Attorneys for Defendant
Officer Kevin Flanagan

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *Lead case (08-8596 DOC (ANx)*<br>JERRY ALEXANDER, individually, and SHERYL BELL, individually,<br><br>　　　　　　Plaintiffs,<br><br>vs.<br><br>CITY OF ANAHEIM, OFFICER KEVIN FLANAGAN, and DOES 1 through 10, Inclusive,<br><br>　　　　　　Defendants.<br><br>*Consolidated case (09-00069 DOC (RNBx))*<br>RENEE ALEXANDER, individually, and as Successor in Interest to JULIAN CARTER ALEXANDER, deceased, and M.A., a minor, individually, by and through her Guardian Ad Litem, RENEE ALEXANDER,<br><br>　　　　　　Plaintiffs, | Case No. SACV 08-8596 DOC (ANx) *consolidated with* SACV 09-0069 DOC (RNBx)<br><br>**DEFENDANT'S TRIAL BRIEF**<br><br>Trial Date:　October 5, 2010<br>Ctrm:　　　9D<br>Judge:　　　Hon. David O. Carter |

vs.

CITY OF ANAHEIM, OFFICER KEVIN FLANAGAN, and DOES 1 through 10, inclusive,

    Defendants.

  Defendant Kevin Flanagan ("Defendant") hereby submits the following trial brief for this matter.

  The evidence at trial will show that on October 28, 2008, at approximately 1:30 a.m., Officer Kevin Flanagan was on patrol in the City of Anaheim driving a marked black and white police vehicle. Plaintiffs' decedent, Julian Alexander, resided at 316 North Muller Street in the City of Anaheim. As he was driving down North Muller Street, Officer Flanagan observed broken glass in the street, which he suspected may have been from an auto burglary or stolen vehicle. He also observed several individuals in the general proximity (the "subjects"), who fled from Officer Flanagan.

  The subjects ran from Muller Street eastbound onto Bayport Circle and Officer Flanagan followed them, initially in his vehicle and later on foot. The subjects proceeded into an alley behind (to the east of) the residence located at 316 North Muller. They then headed through the back yard area behind 316 North Muller towards North Muller Street (i.e., westbound), which required them to jump several fences. Rather than follow the fleeing subjects over the fences, Officer Flanagan ran westbound on Bayport Circle to North Muller, with the intention of reestablishing visual contact with the subjects when they emerged onto North Muller Street.

  When he rounded the corner onto North Muller Street, Officer Flanagan observed three individuals in the unfenced/open front yard adjacent to 316 North

1  Muller, whom he believed to be three of the subjects he was chasing. Prior to
2  Officer Flanagan's arrival at this location, the subjects had been confronted by Mr.
3  Alexander. Mr. Alexander was angry, was using profanity (the "F word"), called the
4  subjects the "N word," threatened to kill the subjects, and swung the stick/club at at
5  least one of the subjects. As he "pied" the corner of 316 North Muller (tactically
6  peered around the building using its angle for cover), Officer Flanagan withdrew
7  his handgun. However, he holstered his weapon before giving chase across the
8  front yard[1].

9  As Officer Flanagan ran across the open front yard of 316 North Muller in
10 pursuit of the subjects, Mr. Alexander turned towards Officer Flanagan, holding a
11 stick/club. The subjects used Mr. Alexander's distraction (focus on Officer
12 Flanagan) as an opportunity to escape, and turned and ran. None of the subjects
13 observed what occurred in the final seconds before the shooting, as all were facing
14 in the opposite direction, and none of them will contradict Officer Flanagan's
15 testimony that Mr. Alexander turned and advanced toward him. The evidence will
16 show that the stick/club wielded by Mr. Alexander was 37 inches long,
17 approximately 1 to 1.5 inches in diameter, had nails pounded into one end, and had
18 black electrical tape on both ends. The stick/club was kept by the door of 316
19 North Muller by the residents for protection.

20 After turning to face Officer Flanagan, Mr. Alexander advanced towards
21 him. Officer Flanagan twice ordered Mr. Alexander to drop the stick/club he was
22 wielding. Mr. Alexander did not comply with this order and instead continued to

---

[1] The Court's order denying defendant's motion for summary judgment with respect to the Fourteenth Amendment claim states (at page 11) that "Officer Flanagan had his gun unholstered as he chased the juvenile suspects into Mr. Alexander's yard." Although Officer Flanagan testified in deposition that he withdrew his handgun and pointed it around the corner (Flanagan Depo. at 89), he also testified that he holstered the handgun and retrieved his flashlight as the suspects ran from him at that point (Flanagan Depo. at 98-99). No witness alleges that he saw Flanagan give chase across the front yard with his gun unholstered; rather, the witnesses saw flashlight beams, supporting Officer Flanagan's statement that he had his flashlight, not his gun, in his hand.

advance towards Officer Flanagan, raising the stick/club as he did so. Testimony of at least three witnesses will establish that Alexander advanced towards Officer Flanagan, and that the officer gave at least two warnings. When the distance between Mr. Alexander and Officer Flanagan was closed to approximately 10 feet, Officer Flanagan, fearful that Mr. Alexander was going to strike him with the stick/club, fatally shot Mr. Alexander in self defense. From the time Officer Flanagan ran out of the alley onto Bayport until the time of the shooting, less than 30 seconds elapsed.

The only claim remaining in this action is brought under the Fourteenth Amendment by the decedent's parents Jerry Alexander and Sheryl Bell for loss of companionship and society of Mr. Alexander. Defendant's contentions regarding this claim are set forth in detail in his previously-filed Motion for Summary Judgment and Memorandum of Contentions of Fact and Law.

In order to prevail on their Fourteenth Amendment claim at trial, plaintiffs must establish that Officer Flanagan's actions shock the conscience and were for the purpose of causing Julian Alexander's death. More specifically, plaintiffs must show that Officer Flanagan's actions were arbitrary, irrational and "shock the conscience" because he acted with a specific "intent to harm" Julian Alexander that was unrelated to any legitimate action he was performing. County of Sacramento v. Lewis, 523 U.S. 833, 846, 848 49 (1988) ("Lewis"); Porter v. Osborn, 546 F.3d 1131, 1137 40 (9th Cir. 2008).

Lewis, supra, explained that "[t]he touchstone of [Fourteenth Amendment] due process is protection of the individual against arbitrary action of government," and "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense,'" Id. at 846 (citations omitted). In adopting this standard, the Court noted that restricting substantive due process claims to cases that satisfy this high threshold was and is necessary to prevent the Fourteenth Amendment from becoming a "font of tort law." Id. at 848 49. Only conscience shocking behavior

can be sufficiently arbitrary and egregious to be of constitutional significance. Id. at 846 47 and n. 8.

For plaintiffs to show that Officer Flanagan's shooting of Julian Alexander shocks the conscience, they must prove that his purpose was "to cause harm unrelated to the legitimate object of [his law enforcement task]." Lewis, supra, at 836, 846. The courts (including the Supreme Court in the Lewis case), have found that in a fast paced and rapidly evolving situation, this requires the plaintiff to show that an officer acted "maliciously and sadistically for the very purpose of causing harm." Lewis, supra, at 853 (in cases involving rapidly evolving circumstances, liability should turn on whether force was applied in good faith or instead "maliciously and sadistically for the very purpose of causing harm"); Porter, supra, at 1138 (citing malicious and sadistic purpose to cause harm standard set forth in Lewis as applicable to Fourteenth Amendment substantive due process claims); Claybrook v. Birchwell, 199 F.3d 350, 359 (6th Cir. 2000) (to establish Fourteenth Amendment substantive due process claim, shooting victim must show officer acted "maliciously and sadistically for the very purpose of causing harm."); Neal v. St. Louis County Bd. of Police Comm'rs, 217 F.3d 955, 958 (8th Cir. 2000) (unless police officer acted "maliciously and sadistically for the very purpose of causing harm," his accidental shooting of the plaintiff did not violate the plaintiff's Fourteenth Amendment rights); Slusher v. Carson, 488 F.Supp.2d 631, 640 (E.D. Mich. 2007) (in a rapidly evolving, fluid, and dangerous predicament precluding calm and reflective pre-response deliberation, the officer's action will "shock the conscience" only if it involves force employed maliciously and sadistically for the purpose of causing harm); Lee v. Williams, 138 F.Supp.2d 748, 761 (E.D.Va. 2001) (hostage shot by deputies during a robbery must show that deputies employed force against him in a "malicious or sadistic manner" that "shocks the conscience"), citing Farmer v. Brennan, 511 U.S. 825, 835 36 (1994) (malicious or sadistic behavior entails unjustifiable, intentional conduct taken with the direct purpose of

harming the victim).[2]

In short, to prevail on their Fourteenth Amendment claim, plaintiffs must prove that Officer Flanagan shot Julian Alexander intentionally and maliciously for the express purpose of harming him, rather than by mistake or for any legitimate law enforcement reason. Defendant submits that there is absolutely no evidence to support any such finding, and plaintiffs will not be able to adduce any such evidence at trial.

Dated: September 28, 2010

BURKE, WILLIAMS & SORENSEN, LLP
RICHARD R. TERZIAN
KRISTIN A. PELLETIER


By: _____/S/_____
KRISTIN A. PELLETIER
Attorneys for Defendant
Officer Kevin Flanagan


Dated: September 28, 2010

CRISTINA L. TALLEY
CITY ATTORNEY


By: _____/S/_____
MOSES W. JOHNSON, IV
Assistant City Attorney
Attorneys for Defendants
CITY OF ANAHEIM and OFFICER KEVIN FLANAGAN

---

[2] The "malicious or sadistic" test of Fourteenth Amendment conscience shocking behavior controls this case because Officer Flanagan had no opportunity to ponder or debate his reaction to the dangerous actions of the decedent armed and coming at him with a 37 inch club. Claybrook, supra, 199 F3d at 359 360. Moreover, the law is clear that there is no liability under the Fourteenth Amendment because the officer is alleged to have created the danger that leads to the Fourteenth Amendment violation. Id. at 360, n. 13, citing Plakas v. Drinski, 19 F.3d 1143, 1150 (7th Cir. 1994) (no Fourteenth Amendment liability on theory that officer caused the trouble that led to use of force).